**FILED**
**Aug 11, 2025**
**08:54 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT NASHVILLE

| | | |
|---|---|---|
| **ALICIA HOWARD,** | ) | **Docket No.:**  2021-60-2344 |
| **Employee,** | ) | |
| **v.** | ) | **State File No.:**  38780-2024 |
| | ) | |
| **DAVIDSON TRANSIT ORG.,** | ) | **Judge Robert Durham** |
| **Employer.** | ) | |

---

## EXPEDITED HEARING ORDER DENYING BENEFITS

---

This Court held an Expedited Hearing on July 30, 2025, on Ms. Howard's request that Davidson Transit authorize additional medical treatment for injuries she asserted arose primarily out of her work-related fall. Ms. Howard also requested reimbursement of expenses from unauthorized doctors as well as temporary disability benefits from her termination date.

For the reasons below, the Court denies additional medical treatment for her current symptoms and reimbursement of unauthorized medical expenses. Temporary disability benefits are also denied because Ms. Howard's authorized doctors placed her at maximum medical improvement before her termination. However, Davidson Transport must continue to pay for medical care from authorized physicians for injuries causally related to Ms. Howard's fall.

### History of Claim

On May 31, 2024, Ms. Howard, a bus driver for Davidson Transport, tripped and fell over a culvert at a bus stop. Ms. Howard testified she fell on her left side, injuring her left leg and arm and her head. After an emergency room visit and treatment at an urgent-care clinic, Davidson authorized Ms. Howard to treat with orthopedist Peter Casey.[1]

---

[1] Ms. Howard saw nine doctors. The Court read all those records but will only summarize those that are relevant to this decision.

Dr. Casey saw Ms. Howard in June for her left wrist and hand, although he noted she also injured her head. Dr. Casey noted mild swelling over her left-thumb area, but a CT scan did not reveal any fractures. He diagnosed a left-thumb CMC joint sprain and ordered physical therapy. An MRI did not reveal any abnormalities.

Ms. Howard went through a work-hardening program, and in early October, Dr. Casey noted that her condition had "significantly improved." She had minimal pain with full range of motion and sensation. Ms. Howard disagreed with this statement at the hearing. In any event, Dr. Casey released her to return to full-duty work, stating she could return on an as-needed basis. He completed a Final Medical Report in mid-October, declaring that Ms. Howard was at maximum medical improvement on October 1 with a 0% impairment rating and that he did not anticipate the need for further care. Despite Dr. Casey's release, Ms. Howard continued to complain of left-hand and wrist pain.

Davidson authorized her to see orthopedist Douglas Weikert, M.D. for further treatment in April 2025. Ms. Howard described work difficulties with pushing her emergency brake and using the steering wheel that left her unable to drive. Dr. Weikert examined her and reviewed her earlier medical records and diagnostic tests. He did not observe any abnormalities to explain her symptoms.

Dr. Weikert diagnosed a left-wrist strain. He released her to return to work with no restrictions and noted she had already received an impairment rating and was placed at maximum medical improvement. He referred her to physiatrist Jeffrey Hazlewood for pain management.

Dr. Hazlewood saw Ms. Howard in May. On exam, Dr. Hazlewood did not observe any swelling or signs of chronic regional pain syndrome. He observed that Ms. Howard's tenderness and pain were global and non-focused. He noted inconsistencies in her presentation and atypical pain behavior. He wrote that her "subjective symptoms far outweigh any objective findings of which there are really none at this point."

Dr. Hazlewood concluded that he had no explanation for Ms. Howard's chronic pain. He could not justify further conservative treatment through therapy, opioids, or injections, and two surgeons had decided surgery would not help. He did not feel she had any objective limitations against working. In his final medical report, he wrote she had a permanent impairment, but her rating was 0% under the AMA Guides.

Dr. Hazlewood reasoned that symptoms that manifested a year later could not be due to her accident. He concluded that Ms. Howard had no objective basis for her ongoing pain and she could return to regular duty. He did not believe she needed further treatment for her work injury.

Davidson submitted a statement signed by Dr. Weikert in June, in which he said that

2

"any and all treatment" Ms. Howard may need for her left arm is unrelated to and not the natural consequence of her May 2024 work injury. He wrote that it was "apparent" to him that no one could find any condition to treat in her left arm caused by her work injury, nor was the neuropathy she now complained of related to it. He concluded that Ms. Howard's emergency room visit in May (discussed below) was due to symptoms unrelated to her work injury.

While treating for her wrist, Ms. Howard also began receiving authorized care with orthopedist Damon Petty, M.D for left-knee symptoms. Dr. Petty first saw Ms. Howard in September 2024. She told him that she bruised her left leg in her work-related fall, and while doing squats during work-hardening for her wrist, she began experiencing pain around her quadriceps tendon. She said that she was unable to "lock her left knee straight while standing" without severe pain.

Dr. Petty ordered an MRI and felt it showed a possible small lateral meniscus tear, along with some mild degenerative and congenital changes. Ms. Howard continued to report difficulty in straightening her knee and said it felt subjectively unstable. Dr. Petty gave her a cortisone shot, but Ms. Howard said it caused an allergic reaction that required her to go to the emergency room. Dr. Petty felt the knee looked "pretty normal," despite Ms. Howard describing persistent pain and swelling, and he could not identify the reason for her knee problems. He did not think the MRI result warranted an arthroscopy, so he recommended Ms. Howard get a second opinion.

Orthopedist Robert Fitch, M.D. agreed to treat Ms. Howard. Dr. Fitch ordered another MRI in January 2025. The report stated that Ms. Howard suffered from early chondromalacia patella, but it did not record any meniscal tears. Dr. Fitch agreed that the MRI did not show anything requiring surgery. He ordered additional therapy.

Dr. Fitch saw Ms. Howard in February and said she was slowly improving with therapy. He believed she could return to employment without restrictions, and he placed her at maximum medical improvement with a 0% impairment.

In addition to her knee and arm, Ms. Howard also asserted that she injured her head in the fall. At this point Ms. Howard visited several different physicians, including a neurosurgeon, a neurologist, a pain specialist, and a psychiatrist. None of these physicians offered an opinion that her conditions were directly related to her fall.

Ms. Howard also testified about her attempts to return to work as a bus driver for Davidson. She tried to return to work after she was released for her left wrist and knee but could not do so because she had difficulty turning the steering wheel and operating the brake.

Ms. Howard additionally submitted two "Human Performance Evaluations," the

3

first on June 10 and the second on June 30, that Davidson required her to pass before returning to work. Both evaluations determined Ms. Howard could not perform the essential functions of her job due to her physical symptoms. As a result, Davidson terminated her employment after the second evaluation.

**Findings of Fact and Conclusions of Law**

Ms. Howard must prove a likelihood of prevailing at a hearing on the merits that she is entitled to the requested benefits. Tenn. Code Ann. § 50-6-239(c)(6) (2024).

To prove causation, Ms. Howard must establish that her current symptoms and need for treatment primarily arose out of her alleged work injury. § 50-6-102(12)(A). Further, causation must be proven to a "reasonable degree of medical certainty," which requires an expert medical opinion. § 50-6-102(12)(C).

Since her fall, Ms. Howard has treated with multiple doctors of varying specialties for conditions she asserted were due to her work injury. She underwent authorized care from two orthopedists and a physiatrist for her left upper extremity. None of them could explain Ms. Howard's continued complaints or had any further treatment to offer. They all assigned a 0% impairment and said she could return to work without restrictions. Dr. Weikert went further and recently expressed his opinion that none of Ms. Howard's current symptoms involving her left arm, including pain, weakness, and numbness, were due to her work injury.

Davidson also authorized care with two orthopedists for Ms. Howard's left knee. At best, diagnostic tests showed a questionable small lateral meniscus tear that did not warrant surgery and some mild degenerative changes that were not work-related. Both doctors released Ms. Howard at maximum medical improvement with 0% impairment, no restrictions, and no anticipated future medical care.

Ms. Howard also asserted that she suffers from debilitating headaches that she attributed to her fall and striking her head on concrete. No doctor has said that her headaches primarily arose out of her fall.

Section 50-6-102(12)(E) states that an authorized doctor's causation opinion is presumed correct. Section 50-6-204(a)(3)(H) states that the authorized doctor's opinion as to reasonableness and necessity is also presumed correct. The Court holds that Ms. Howard is entitled to treatment with authorized physicians for any conditions involving her left wrist or her left knee that primarily arose from her fall in May 2024.

However, none of the authorized physicians has ascribed Ms. Howard's current symptoms to her accident, and all have stated that no further care for her injuries is necessary or anticipated at this time. Further, none of the unauthorized doctors who have

4

treated Ms. Howard has said that her current symptoms primarily arose from her work accident.

Therefore, Ms. Howard has not offered sufficient proof to overcome the authorized doctors' opinions as to causation and the reasonableness and necessity of continued care for her current symptoms. Thus, the Court holds that Ms. Howard is not likely to prevail at a hearing on the merits that she is entitled to treatment for her current symptoms at this time, nor is she entitled to reimbursement for past unauthorized expenses. But the Court further holds that she remains entitled to reasonable and necessary treatment with authorized physicians for conditions to her left wrist and knee that arose primarily from her work accident.

Ms. Howard also asserted she is entitled to psychiatric care for increased stress and anxiety caused by the injury and her employment situation. However, as with her headaches and perceived radiculopathy, no doctor has linked her fall as the primary cause of her need for psychiatric treatment. More important, section 50-6-204(h) states that psychiatric or psychological care is limited to services ordered upon the referral of authorized physicians. Here, no authorized physician has recommended any treatment. Thus, Ms. Howard's request for treatment of her alleged mental injury is also denied.

Finally, Ms. Howard additionally requested temporary disability benefits after her termination by Davidson because she could not perform the essential functions of her job as a bus driver. To receive benefits, Ms. Howard must prove: (1) disability from working as the result of a compensable injury; (2) a causal connection between the injury and the inability to work; and (3) the duration of the period of disability. *Shepherd v. Haren Const. Co., Inc.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 15, at *13 (Mar. 30, 2016).

Ms. Howard was placed at maximum medical improvement by all authorized physicians before Davidson fired her. They also said she could return to work without restrictions. Ms. Howard did not submit any contrary medical evidence. Thus, the Court denies Ms. Howard's request for temporary disability benefits.

This case is set for a Scheduling Hearing on **September 30, 2025, at 1:30 p.m. Central Time**. The parties must call 615-253-0010. Failure to appear might result in a determination of the issues without the party's participation.

IT IS ORDERED.

**ENTERED August 11, 2025.**

5

_____
**ROBERT DURHAM, JUDGE**
**Court of Workers' Compensation Claims**

Exhibits:
1. Wage Statement
2. Emergency Room Report
3. CareNow records
4. Medical records from Dr. Raygor
5. Medical records from Dr. Fitch
6. Medical records from The Brain Institute
7. Medical records from Dr. Weikert
8. Dr. Weikert's report and DOT certification
9. Additional records from The Brain Institute
10. May 25 Vanderbilt Health records
11. Vanderbilt Pain Management records
12. Concentra records
13. Dr. Hazlewood records
14. DOT Medical Examiner letter
15. Concentra HPE evaluations and termination notice
16. Text chains with attachments
17. Emails between Ms. Howard and Davidson
18. Medical records filed by Davidson
19. Emergency room records
20. Affidavit of Trent Edwards with attachments
21. Panel selection forms
22. Emails from Dr. Crosby
23. First Report of Injury

## CERTIFICATE OF SERVICE

I certify that a copy of the Order was sent as indicated on August 11, 2025.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Alicia Howard | | | X | Mshoward39@gmail.com |
| David Drobny | | | X | ddrobny@manierherod.com |
| Rhoberta Orsland | | | X | rorsland@manierherod.com |

_____
**PENNY SHRUM, Court Clerk**
WC.CourtClerk@tn.gov



Right to Appeal:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board. To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
   ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
   ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.

   When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal. If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee. If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk. The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted. For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

   **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable. See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____
**Employee**

v.

_____
**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____    ☐ Motion Order filed on _____

☐ Compensation Order filed on_____    ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee
Appellee's Address: _____ Phone: _____
Email: _____
Attorney's Name: _____ BPR#: _____
Attorney's Email: _____ Phone: _____
Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

## <u>CERTIFICATE OF SERVICE</u>

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 ____.

_____
*[Signature of appellant or attorney for appellant]*